Inez D. **BANKSTON**, Plaintiff-Appellant,

v.

**UNITED STATES** of America,
Defendant-Appellee.

No. 72-2755.

United States Court of Appeals,
Fifth Circuit.

June 25, 1973.

Benjamin B. Saunders, New Orleans, La., for plaintiff-appellant.

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Morton Hollander, Stanton R. Koppel, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before COLEMAN, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff seeks recovery under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) et seq., for the wrongful death of her son as the result of alleged medical malpractice by the staff of a United States Public Health Service Hospital. The District Court granted the Government's motion for summary judgment on the ground that the Government is not liable under the Tort Claims Act for injuries to servicemen when the injuries arise out of or are in the course of activity incident to military service, on the authority of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and Shults v. United States, 421 F.2d 170 (5th Cir. 1969). Because the factual issue whether the serviceman had been discharged from military service at the time of the claimed negligence is unresolved, we reverse and remand for further proceedings consistent with this opinion.

On August 24, 1968, decedent, Jared Y. Bankston, awaiting discharge from the Army while on terminal leave at his home, was injured in an automobile accident. The accident occurred on the very day that his terminal leave was to end and he was to be separated from the service. He was admitted for treatment

to the United States Public Health Service Hospital in New Orleans, where he died from hepatitis on November 14, 1968. Plaintiff alleges that her son contracted this disease as a result of the hospital staff's negligent transfusion of contaminated blood.

The Tort Claims Act does not deny its coverage to servicemen and veterans by its terms, but a military exception to the Government's liability under the Act has been judicially created. This case falls between two lines of authority regarding this exception.

In the two cases relied on by the District Court, the injured servicemen were members of the Armed Forces and were subject to all military regulations and discipline when they sustained the injuries as a result of the Government's negligence. Feres v. United States, *supra*, and Shults v. United States, *supra*.

When it handed down its decision in *Feres,* the Supreme Court reviewed three cases. In each instance, the alleged negligent act—quartering a soldier in unsafe barracks, failing to remove from a soldier's stomach a thirty-inch Army towel placed there during an abdominal operation performed by Army surgeons, and unskillful medical treatment by Army surgeons—occurred during each serviceman's regular active duty. The Court concluded that, under the Tort Claims Act, the Government was not liable for the injuries in any of these cases because the Act's coverage is not extended to "servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U. S. at 146, 71 S.Ct. at 159.

In *Shults,* decided by this Court, the serviceman's death was also allegedly caused by malpractice at a military hospital. Shults, a sailor on forty-eight hour "liberty" from duty, was struck by an automobile and admitted to a Naval hospital, where he died. The administrator of his estate, alleging malpractice by the Naval hospital staff, sued the Government under the Federal Tort Claims Act. Summary judgment for the Government was granted on the ground that Shults' death arose "out of and in the course of activity incident to his military service and, thus, was not actionable under the Tort Claims Act." 421 F.2d at 171. This Court, affirming, admitted that the serviceman "was injured while on leave and that the leave was never formally cancelled prior to his death.

> Nevertheless, it is obvious that the injured man could not have been admitted, and would not have been admitted, to the Naval Hospital except for his military status. He was there treated by Naval medical personnel solely because of that status. It inescapably follows that whatever happened to him in that hospital and during the course of that treatment had to be 'in the course of activity incident to service.'"

421 F.2d at 171–172. With active military status, Shults would have remained in the service had he recovered.

Prior to *Feres,* the Supreme Court had sustained a serviceman's claim against the Government under the Tort Claims Act in Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). In *Brooks,* two servicemen, brothers who were riding in an automobile with their father on a public highway, were negligently injured by a Government employee driving a Government truck. The Court reasoned that

> we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented.

337 U.S. at 52, 69 S.Ct. at 920.

Thereafter, in United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L. Ed. 139 (1954), the Supreme Court interpreted its two earlier decisions on this issue for the purpose of determining which case controlled the right of a

member of the Armed Forces to recover against the Government:

> The case is here on a petition for certiorari which we granted . . . because of doubts as to whether Brooks v. United States, . . . or Feres v. United States, . . . controlled this case.

348 U.S. at 110, 75 S.Ct. at 142. Peter Brown, a discharged veteran, had injured his knee while on active duty in the Armed Services during the 1940's. This injury led to his discharge in 1944. In 1951, Brown entered the Veterans Administration Hospital for a knee operation, and the application of a defective tourniquet caused permanent nerve damage to his leg. He sued the United States for damages under the Tort Claims Act.

In its reasoning, the Supreme Court differentiated its earlier decisions of *Brooks* and *Feres:*

> The *Brooks* case held that servicemen were covered by the Tort Claims Act where the injury was not incident to or caused by their military service. . . . In that case, servicemen on leave were negligently injured on a public highway by a government employee driving a truck of the United States. . . .
>
> The *Feres* decision involved three cases, in each of which the injury, for which compensation was sought under the Tort Claims Act, occurred while the serviceman was on active duty and not on furlough; and the negligence alleged in each case was on the part of other members of the Armed Forces. The *Feres* decision did not disapprove of the *Brooks* case. It merely distinguished it, holding that the Tort Claims Act does not cover "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

348 U.S. at 111–112, 75 S.Ct. at 142–143. The *Brown* Court then recounted the reasons behind the *Feres* decision:

> The peculiar and special relationship of the soldier to his superiors, the ef-

fects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.

348 U.S. at 112, 75 S.Ct. at 143.

The Supreme Court in *Brown* held, consequently, that the serviceman's claim should be sustained:

> The present case is, in our view, governed by *Brooks*, not by *Feres*. The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. The injury occurred after his discharge, while he enjoyed a civilian status. The damages resulted from a defective tourniquet applied in a veterans' hospital. Respondent was there, of course, because he had been in the service and because he had received an injury in the service. And the causal relation of the injury to the service was sufficient to bring the claim under the Veterans Act. But, unlike the claims in the *Feres* case, this one is not foreign to the broad pattern of liability which the United States undertook by the Tort Claims Act.

348 U.S. at 112, 75 S.Ct. at 143.

Thus, we conclude that the controlling fact in the case at bar is whether Bankston had been discharged from the service at the time of the alleged negligence or that his status was tantamount to being discharged for the purpose of asserting this claim. The Government would have us hold that, since Bankston was admitted to the United States Public Health Service Hospital solely on the authority of his valid military ID card, any malpractice at the hospital was directly incident to Bankston's military service. That conclusion is not only contrary to the Supreme Court's holding in *Brown*, but would overlook the foundation of *Feres*, that the Government's liability turns not on the reasons for the

treatment from which the claim arises, but on the effect of a suit for damages on the military system.

Plaintiff asserts that Bankston was no longer a "member" of the United States Army after August 24, 1968, that no further orders were issued to him after his scheduled date of separation, that he received no additional salary or other compensation after that date, and that neither he nor any member of his family received any disability allowance. Resolution of these factual issues is necessary to the determination of whether *Feres* or *Brown* is to control this case.

Reversed and remanded.